IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

T.W. KING                                                            PLAINTIFF

VS.                                 CIVIL ACTION NO. 2:09cv33-KS-MTP

NAKIA ANDERSON, ET AL.                           DEFENDANTS

**REPORT AND RECOMMENDATION**

THIS MATTER is before the court on the Defendants' Motion for Summary Judgment [63]. Having reviewed the submissions of the parties and the applicable law, the undersigned recommends that the motion be granted.

FACTUAL BACKGROUND

Plaintiff T.W. King, proceeding *pro se* and *in forma pauperis*, filed his civil rights complaint [1] on March 2, 2009. As set forth in his complaint and as clarified during his *Spears*[1] hearing, Plaintiff asserts a claim against Defendants for excessive force and cruel and unusual punishment in violation of the Eighth Amendment. Specifically, he claims that he was assaulted and/or beaten by Officer Sundie Loper and Officer Marshall Turner on or about August 23, 2008. He claims that Defendants Nakia Anderson, Thomas Rushing, and Edward Lee were present during the beating and failed to take any action to stop and/or prevent the beating.[2] *See* Scheduling and Case Management Order [48]. Plaintiff's claims occurred while he was a post-conviction inmate at the South Mississippi Correctional Institution ("SMCI"). Plaintiff is

---

[1]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Plaintiff's *Spears* hearing occurred on October 6, 2009.

[2]Plaintiff alleged similar claims against Buford Clark; however, Mr. Clark has been dismissed from this action. *See* Report and Recommendation [49]; Order [54]; Judgment [55].

currently incarcerated at the Central Mississippi Correctional Facility ("CMCF"), serving a life sentence after having been convicted of homicide and arson in Leflore County.

On February 18, 2010, Defendants filed their Motion for Summary Judgment [63]. Plaintiff filed his Response [68] in opposition to the Motion [63] on May 11, 2010.

STANDARD FOR SUMMARY JUDGMENT

This court may grant summary judgment only if, viewing the facts in a light most favorable to Plaintiff, the Defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If the Defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *John*, 757 F.2d at 708, 712.

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), is not enough to create a real controversy regarding material facts. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis

omitted).

## ANALYSIS

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability." *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability.") (citations omitted). "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)). Thus, supervisory prison officials may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Moreover, "[f]or purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted). The Supreme Court has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom, or practice of that local government entity was the "moving force" behind the constitutional violation. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).

Plaintiff claims that on August 23, 2008, he got into a verbal disagreement with Officer Sundie Loper. Specifically, he claims he went to the tower where Officer Loper was posted

3

because he thought she called his bed number. Officer Loper told him she had not called his bed number and cursed at him. Plaintiff testified that he told her he was going to pull her wig off, and then went back to his rack. He claims that moments later, he was taken to Lieutenant Thomas Rushing's office by two guards. He claims that Officer Loper and Officer Marshall Turner then assaulted him for no reason. He claims that Officer Loper jumped on him and hit him with her hands and fists while Officer Turner held his hands behind his back. He claims that Officer Lee, Lt. Rushing and Sergeant Nakia Anderson stood by during the assault and did nothing to stop it.

As a result of the alleged assault, Plaintiff claims his head and neck were injured. He claims he suffered no broken bones, only scratches and bruises. He claims he was taken to the medical clinic two hours later and was given ibuprofen.[3]

When prison officials are accused of using excessive force in violation of the Eighth Amendment, "the *core judicial inquiry* is . . . whether force was applied *in a good-faith effort to maintain or restore discipline*, *or maliciously and sadistically to cause harm.*" *Baldwin v. Stalder*, 137 F.3d 836, 838 (5th Cir. 1998) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). The Eighth Amendment's "prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force

---

[3]Plaintiff testified that he had to wait approximately two hours before he was taken to the infirmary for the alleged injuries to his head and neck as a result of the assault. He testified that once he was taken to the infirmary, he was given ibuprofen for his injuries and that he had no cuts or broken bones.

Because Plaintiff failed to allege a substantial injury caused by the minimal delay in receiving medical treatment, and because Plaintiff failed to allege a claim for the denial and/or delay of adequate medical treatment against any specific party or individual, the court found that no medical claim will go forward. *See* Scheduling and Case Management Order [48] at footnote 4; *see also Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) ("[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm.").

4

is not of a sort repugnant to the conscience of mankind." *See Copeland v. Nunan*, 250 F.3d 743, No. 00-20063, 2001 WL 274738, at *2 (5th Cir. Feb. 21, 2001) (quoting *Hudson*, 503 U.S. at 1) (internal quotations and citations omitted).

Some of the relevant objective factors in the inquiry of the application of excessive force include: "1) the extent of the injury suffered; 2) the need for the application of force; 3) the relationship between the need and the amount of force used; 4) the threat reasonably perceived by the responsible officials; and 5) any efforts made to temper the severity of the forceful response." *Baldwin*, 137 F.3d at 838-39 (internal citations omitted).

Defendants deny the allegations in Plaintiff's complaint and deny ever applying excessive force to Plaintiff. In her written statement, Officer Loper states that Plaintiff came to the tower where she was posted on August 23, 2008, and asked her why she called his bed number. After telling Plaintiff that she did not call his bed number, Plaintiff became loud and disruptive. She called another yard officer because she had experienced trouble with Plaintiff in the past. Lt. Rushing and Officrs Clark, Anderson, Turner, and Lee entered the unit and Officer Loper advised Lt. Rushing of Plaintiff's outburst. Plaintiff then told Lt. Rushing that it was all a misunderstanding. Lt. Rushing then instructed Officer Loper to resume her duties at the tower and stated that Plaintiff would be taken to a holding cell until the next shift change. Officer Loper states that Plaintiff was never assaulted by staff and that he never asked to go to the infirmary. *See* Ex. A to Motion [63-2].

Lt. Rushing's statement corroborates Officer Loper's statement of what occurred. Lt. Rushing further states that none of the officers ever acted unprofessionally and no one ever assaulted Plaintiff. Lt. Rushing states that Plaintiff has never been assaulted in his presence. *See* Ex. B to Motion [63-2]. He states that Plaintiff is a "problematic offender" and that his allegations are completely fabricated. Lt. Rushing further states that Plaintiff approached him

5

months later in April 2009, and suggested that if he went along with Plaintiff's story, he would "let him off the hook." *See* Ex. B to Motion [63-2].

Based on the record before the court, it is unclear of whether any assault actually occurred and whether any force was actually applied to Plaintiff. Even assuming that Defendants did apply some force to Plaintiff after his outburst and that such use of force was not applied in a good faith effort to restore discipline, the court concludes that it was a *de minimis* use of physical force based on the extent of the injuries allegedly suffered. Plaintiff claims his head and neck were injured, but testified that he suffered no broken bones, only scratches and bruises. Plaintiff claims he was taken to the medical clinic two hours later and was given ibuprofen. Accordingly, the Plaintiff's allegations do not rise to the level of an Eighth Amendment violation. *See Copeland*, 2001 WL 274738, at *2; *Lee v. Wilson*, 237 F. App'x 965, No. 06-50191, 2007 WL 2141956, at *1 (5th Cir. July 26, 2007) (affirming dismissal of claims for excessive force and denial of adequate medical treatment because injury to plaintiff's lip was *de minimis*); *Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 1997) (affirming dismissal of prisoner's excessive force claim, holding that prisoner's sore bruised ear was *de minimis* injury).

Plaintiff's Response [68] fails to create a genuine issue of material fact as to his claim for excessive force. Instead, he merely restates the allegations previously addressed and states in a conclusory manner that he "has in fact made a credible showing that force was misapplied and that it was not done so in good faith and defendants did use unnecessary force to maliciously and sadistically to cause . . . Plaintiff harm." Response [68] at 3. Plaintiff claims he has sick call forms and Captain Roberts as a witness to corroborate his claims, but fails to attach the forms or any other evidence to his response.[4]

---

[4]Plaintiff further states that he is disabled and has claims under the Americans with Disabilities Act ("ADA"). Plaintiff did not allege ADA claims against the Defendants in his

6

Based on the foregoing, the undersigned concludes that Defendants are entitled to judgment as a matter of law.

RECOMMENDATION

For the reasons stated above, the undersigned recommends that the Defendants' Motion for Summary Judgment [63] be granted and that this action be dismissed with prejudice.

NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS, the 21st day of May, 2010.

s/ Michael T. Parker
United States Magistrate Judge

---

complaint or at the *Spears* hearing; thus, these claims are not before the court in this matter. *See* Scheduling and Case Management Order [48].